THOMAS P. O'BRIEN
The United States Attorney

GREGORY G. KATSAS
Assistant Attorney General
EUGENE M. THIROLF
Director
MARY M. ENGLEHART
Trial Attorney
    Office of Consumer Litigation
    U.S. Department of Justice
    P.O. Box 386
    Washington, D.C.  20044-0386          JS-6
    (202) 307-0088
    megan.englehart@usdoj.gov

Attorneys for Plaintiff United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>  vs.<br><br>DELMER VAN DAM, an individual,<br>   and<br>GARY L. VAN DAM, an individual,<br>d/b/a HIGH DESERT DAIRY,<br><br>        Defendants. | Civil Case 08-4803 PA<br><br><u>CONSENT DECREE OF</u><br><u>PERMANENT INJUNCTION</u> |

    Plaintiff, the United States of America, by its undersigned attorneys, having filed a Complaint for Permanent Injunction against Defendants Delmer Van Dam and Gary L. Van Dam, individuals, d/b/a High Desert Dairy (collectively, "Defendants"), and Defendants having appeared and consented to the entry of this Consent Decree of Permanent Injunction ("Decree"), without contest and before any testimony has been taken, and the United States of America having consented to this Decree;

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

I.   This Court has jurisdiction over the subject matter and over all parties to this action.

II.   The Complaint for Permanent Injunction states a cause of action against Defendants under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 et seq. (the "Act").

III.   Defendants violate 21 U.S.C. § 331(a) by introducing, delivering, and causing to be introduced or delivered into interstate commerce articles of food within the meaning of 21 U.S.C. § 321(f) that are adulterated within the meaning of 21 U.S.C. §§ 342(a)(2)(C)(ii) and 342(a)(4).  Defendants also violate 21 U.S.C. § 331(k) by causing articles of drug to become adulterated within the meaning of 21 U.S.C. § 351(a)(5) while such drugs were held for sale after shipment in interstate commerce. And Defendants violate  21 U.S.C. § 331(u) by failing to comply with the conditions of new animal drug use within the meaning of 21 U.S.C. § 360b(a)(4)(A).

IV.   Defendants and each and all of their agents, representatives, employees, attorneys, successors, assigns, and any and all persons in active concert or participation with any of them who have received notice of this Decree, are hereby permanently restrained and enjoined, under the provisions of 21 U.S.C. § 332(a) and the inherent equity authority of this Court, from (1) introducing, delivering, and causing to be introduced or delivered into interstate commerce any article of food within the meaning of 21 U.S.C. § 321(f), and (2) administering to animals any new animal drug, within the

meaning of 21 U.S.C. § 321(v), while such drug is held for sale after shipment in interstate commerce unless and until:

    A.   Defendants have established and implemented a system that ensures that each of the animals that they acquire, purchase, hold, transport, sell, or consign is individually and permanently identified by tag number;

    B.   Defendants have established and implemented a written record-keeping system that prevents them from selling, consigning, or distributing any animals whose edible tissue contains new animal drugs in amounts above the levels permitted by law. This system shall include, but not necessarily be limited to, keeping written records on every animal to which Defendants administer drugs. These records shall include, at a minimum: (1) the identity of each animal that Defendants medicate; (2) the date of each administration of each medication to each animal; (3) the identity of each drug administered; (4) the dosage of each drug used; (5) the route of administration of each drug used; (6) the lawful written order of a licensed veterinarian within the context of a valid veterinarian-client-patient relationship for each drug used, if applicable; (7) the name of the person administering each drug; (8) the proper withdrawal period for each drug administered; (9) the date such withdrawal period will terminate for each drug administered; (10) the date each medicated animal is shipped for slaughter or leaves Defendants' control; and (11) the name and address of the purchaser, receiver, or consignee, of each medicated animal that is shipped for slaughter or leaves Defendants' control;

3

C. Defendants have established and implemented a system that ensures that their use of new animal drugs conforms to the use approved by the United States Food and Drug Administration ("FDA") as set forth in the drugs' approved labeling or to the lawful written orders of a licensed veterinarian.  This system shall include, but not necessarily be limited to, measures to ensure that the following will not occur: (1) administration of drugs in excess of the approved dosage, unless such administration is in accordance with the lawful written orders of a licensed veterinarian within the context of a valid veterinarian-client-patient relationship and is in compliance with 21 C.F.R. § 530; (2) sale or delivery for slaughter of medicated animals before the expiration of the relevant withdrawal period; and (3) use in Defendants' animals of drugs not approved for use in that species or not approved for the disease or other condition for which the animal is being treated, unless such use is in accordance with the lawful written orders of a licensed veterinarian within the context of a valid veterinarian-client-patient relationship and is in compliance with 21 C.F.R. § 530;

D. Defendants have established and implemented a drug inventory and accountability system that prevents them from selling, consigning, or delivering any animals with illegal new animal drug residues.  This system shall include a written record for each drug that Defendants purchase or receive for use in medicating any of their animals, which record shall include, but not necessarily be limited to: (1) the name of the drug; (2) the date of purchase or receipt of the drug; (3) the quantity,

4

strength, and form of the drug purchased or received; (4) the name and address of the supplier or seller of the drug; (5) the date each drug is administered; and (6) the amount and method of each administration of each drug.  In addition, the inventory and accountability system shall include periodic checks of inventory and records, no less frequently than once every fourteen days, to ensure that records accurately document the drugs currently on hand and the disposition of all drugs purchased or received, including whether the drugs have been administered;

  E. Defendants have established and implemented a quarantine or segregation system that ensures ready distinction between medicated and unmedicated animals and that prevents Defendants from selling, consigning, or delivering for slaughter for human consumption any animals with new animal drug residues exceeding established tolerance levels;

  F. Defendants have established and implemented a system that ensures that each animal that has been medicated is not directly or indirectly sold, consigned, or delivered for immediate or ultimate slaughter for human consumption until the withdrawal period (specified either in the approved labeling or in the lawful written orders of a licensed veterinarian, when appropriate, for each drug used in such animal) has expired.  This system shall also ensure that each purchaser, receiver, or consignee receives, prior to accepting any animal, a written statement from Defendants certifying that any animal that has been medicated has also been withdrawn for the appropriate time period or that the animal has not been medicated.  This written statement must also include the

date(s) on which the animal was medicated, each drug with which the animal was treated, the required withdrawal period for each drug, and the date(s) on which the withdrawal period(s) expired. Defendants shall, prior to selling any animal, obtain the signature of the purchaser, receiver, or consignee documenting date of receipt of the statement from Defendants.  Defendants shall keep, as part of their records, a copy of the signed written statement described in this paragraph;

    G.  Defendants have established and implemented a system that identifies the source of each animal that they purchase or transport and documents whether such animal has been medicated, the date of such medication, the drug used, and the withdrawal period for such drug;

    H.  Defendants have reported to FDA in writing the steps they have taken to comply with paragraphs IV(A)-(G);

    I.  FDA has notified Defendants in writing that they appear to be in compliance with the requirements of paragraphs IV(A)-(H) of this Decree.

    V.  Defendants shall maintain all records described in paragraph IV for each animal for a period of at least two years after the date that the animal is sold, consigned, or delivered for slaughter.  These records shall be made available to FDA immediately upon request for purposes of inspection and copying.

    VI.  Within fifteen (15) calendar days after the entry of this Decree, Defendants shall: (a) provide a copy of the Decree, by personal service or by certified mail, return receipt requested, to each and all of Defendants' agents, representatives,

employees, attorneys, successors, assigns, and any and all persons in active concert or participation with any of them, and all persons to whom Defendants have sold, consigned, or delivered any cattle or calves for slaughter within one year preceding the date of entry of the Decree; and (b) explain the terms of the Decree to each employee.

VII.  Within twenty (20) calendar days after the entry of this Decree, Defendants shall provide the Director, FDA Los Angeles District Office, at the address set forth in paragraph XVI, and to Plaintiff's attorneys, an affidavit from a person with personal knowledge of the facts stated therein, stating the fact and manner of Defendants' compliance with paragraph VI and identifying the names and positions of all persons who were notified pursuant to paragraph VI.

VIII.  After entry of the Decree, Defendants shall, within fifteen (15) calendar days of employment of any new employee at Defendants' operation: (a) provide a copy of the Decree, by personal service or by certified mail, return receipt requested, to all such employees; and (b) explain the terms of the Decree to all such employees.

IX.  After Defendants receive written notification from FDA as specified in paragraph IV(I) above, Defendants and each and all of their agents, representatives, employees, attorneys, successors, assigns, and any and all persons in active concert or participation with any of them, are permanently restrained and enjoined from directly or indirectly doing or causing to be done any of the following acts:

7

  A. Introducing and delivering for introduction into interstate commerce any article of food, within the meaning of 21 U.S.C. § 321(f), that is adulterated within the meaning of 21 U.S.C. §§ 342(a)(2)(C)(ii) or 342(a)(4);

  B. Administering to any food-producing animal any article of drug, within the meaning of 21 U.S.C. 321(g), unless such administration is in a manner that strictly conforms to such drug's labeled indications and conditions for use or is by or on the lawful written order of a licensed veterinarian within the context of a valid veterinarian-client-patient relationship and is in compliance with 21 C.F.R. § 530;

  C. Doing any act with respect to any article of drug, within the meaning of 21 U.S.C. § 321(g), if such act is done while such drug is held for sale after shipment in interstate commerce and results in such drug being adulterated within the meaning of 21 U.S.C. § 351(a)(5); and

  D. Failing to implement and continuously maintain the requirements of this Decree.

 X. Representatives of FDA shall be permitted, without prior notice and as and when FDA deems necessary, to make inspections of Defendants' operations, including any new locations, and any facility or location at which Defendants hold or store drugs used to treat animals, including food-producing animals and, without prior notice, to take any other measures necessary to monitor and ensure continuing compliance with the terms of this Decree.  Such inspections may, at FDA's discretion, include the taking of photographs and samples and the examination and copying of all

records that relate to the drug administration and the holding, delivery, sale, consignment, or distribution of animals at any facility or location at which Defendants operate or manage or control their cattle operations.  Such inspections shall be permitted upon presentation of a copy of this Decree and appropriate credentials.  Such inspection authority granted by this Decree is apart from, and in addition to, the authority to make inspections under the Act, 21 U.S.C. § 374.

    XI.  Upon request, Defendants shall promptly provide any information and records to FDA regarding the sale, consignment, delivery, or medication of any animals.

    XII.  Defendants shall reimburse FDA for the costs of conducting and evaluating all inspectional, laboratory and analytical, and other work that FDA deems necessary to evaluate the Defendants' compliance with any part of this Decree at the standard rates prevailing at the time that the activities are accomplished.  As of the date of entry of this Decree, these rates are: $81.61 per hour and fraction thereof per representative for inspection and supervision work other than laboratory and analytical work; $97.81 per hour and fraction thereof per representative for laboratory and analytical work; 50.5 cents per mile for travel by automobile; the government rate or equivalent for travel by air; and the published government per diem rate or the equivalent, for the areas in which the inspections are performed, per representative for subsistence expenses where necessary.  In the event that the standard rates generally applicable to the FDA supervision of court-ordered compliance are

modified, these rates shall be increased or decreased without further order of the Court.

XIII.  If any Defendant violates this Decree and is found in civil or criminal contempt thereof, that Defendant shall, in addition to other remedies, reimburse Plaintiff for its attorneys' fees, travel expenses incurred by attorneys and witnesses, expert witness fees, investigational and analytical expenses, and court costs relating to such contempt proceedings.

XIV.  If, based on the results of any inspection or analysis conducted after the inspection described in paragraph IV(I) or any other information, FDA finds that any Defendant is not in compliance with the Act or the requirements of this Decree, FDA may, as and when it deems necessary, notify Defendants in writing of the non-compliance and may require that Defendants immediately take one or more of the following actions:

(1) Cease selling or delivering, and causing to be sold or delivered, animals for slaughter for use as food;

(2) Cease medicating animals in a manner inconsistent with the drugs' labeled indications and conditions for use or the lawful written orders of a licensed veterinarian within the context of a valid veterinarian-client-patient relationship and FDA's regulations set forth in 21 C.F.R. § 530; or

(3) Take any other corrective actions as FDA deems necessary to bring Defendants into compliance with this Decree, the Act, and FDA regulations, including, but not limited to, requiring that Defendants re-institute or re-implement any of the requirements in paragraph IV of this Decree.  Upon receipt of such notification,

Defendants shall immediately and fully comply with the terms of the notice. Any cessation of operations or other action ordered by FDA as described above shall continue until receipt by Defendants of written notification from FDA that Defendants appear to be in compliance with the terms of this Decree, the Act, and all applicable regulations.

XV. Defendants shall notify FDA at least thirty (30) calendar days before any change in ownership, name, or character of the business that occurs after the entry of this Decree, such as reorganization, relocation, assignment, or sale of the business that may affect compliance obligations arising out of this Decree. Defendants shall serve a copy of this Decree on any prospective successor or assignee at least thirty (30) calendar days prior to such sale or change of business, and shall furnish to FDA and to Plaintiff's attorneys an affidavit of compliance with this paragraph within fifteen (15) calendar days of such sale or change of business.

XVI. All notifications, correspondence, and communications to FDA required by the terms of this Decree shall be submitted to the Director, FDA Los Angeles District Office, HFR-PA240, 19701 Fairchild, Irvine, California 92612.

XVII. All decisions specified in this Decree shall be vested in the discretion of FDA. FDA's decisions shall be final and, if challenged, shall be reviewed by the Court under the arbitrary and capricious standard set forth in 5 U.S.C. § 706(2)(A). Review by a Court of any FDA decision rendered pursuant to this Decree shall be conducted without discovery and shall be based exclusively upon

the written record that was before FDA at the time the decision was made.

XVIII. If any Defendant fails to comply with the provisions of this Decree, that Defendant shall pay to the United States of America liquidated damages in the sum of five hundred dollars ($500.00) for each day that the Defendant fails to comply with this Decree and an additional five thousand dollars ($5,000.00) for each animal that the Defendant sells or delivers for sale in violation of this Decree. Defendants understand and agree that the liquidated damages specified in this paragraph are not punitive in nature and that they do not in any way limit the ability of the United States of America to seek, and the Court to impose, additional criminal or civil contempt penalties based on conduct that may also be the basis for the payment of liquidated damages.

XIX. This Court retains jurisdiction of this action and the parties hereto for the purpose of enforcing and modifying this Decree and for the purpose of granting such additional relief as may be necessary and appropriate.

SO ORDERED:

Dated this 19th day of August, 2008.

_____
U.S. District Court Judge

Entry Consented to:

| FOR DEFENDANTS | FOR PLAINTIFF |
|---|---|
| | THOMAS P. O'BRIEN<br>United States Attorney |
| _____<br>DELMER VAN DAM, on behalf of<br>High Desert Dairy, and in his<br>  individual capacity | EUGENE M. THIROLF<br>Director<br>Office of Consumer Litigation |
| _____<br>GARY L. VAN DAM, in his<br>  individual capacity | _____<br>MARY M. ENGLEHART<br>Trial Attorney<br>U.S. Department of Justice<br>Office of Consumer Litigation |
| _____<br>JOHN A. BABCOCK<br>Babcock & Cappelli, LLP<br>30131 Town Center Drive<br>Suite 245<br>Laguna Niguel, CA 92677<br>Telephone: (949) 249-8009<br>Facsimile: (949) 249-6709<br>johnababcock@sbcglobal.net | P.O. Box 386<br>Washington, DC 20044-0386<br>Telephone: (202) 307-0088<br>Facsimile: (202) 514-8742<br>megan.englehart@usdoj.gov<br><br>Of Counsel: |
| Attorney for Defendants | JAMES C. STANSEL<br>Acting General Counsel<br><br>GERALD F. MASOUDI<br>Chief Counsel<br>Food and Drug Division<br><br>ERIC M. BLUMBERG<br>Deputy Chief Counsel for<br>  Enforcement |

```
                        JOHN H. FUSON
                        Associate Chief Counsel for
                         Enforcement
                        U.S. Dept. of Health & Human
                          Services
                        Office of the General Counsel
                        Food and Drug Division
                        5600 Fishers Lane, GCF-1
                        Rockville, MD 20857
                        Telephone: (301) 827-1190
                        Facsimile: (301) 827-6915
                        John.Fuson@fda.hhs.gov
```